Good morning, Mr. Tanaka. Good morning, Your Honors. May it please the Court, Michael Tanaka, Deputy Federal Public Defender of Pyramid on behalf of Mr. Morris. I'll try to pay attention and reserve about one minute for you all. In this mortgage fraud case, the issue is whether the district court erred in assessing its loss, the entirety of the shortfall between the amount of the loan and what the banks recovered when the properties were disposed of, without any determination of whether that amount was reasonably foreseeable. The court did err. Why is that one of the risks you take when you defraud the bank? Pardon? Why isn't that one of the risks you take when you defraud the bank? You take a risk. If you're near a fraudster, you take a risk that the loss is going to be bigger than you expect. Bigger than you expect, but the issue is whether it's at all foreseeable. Well, what did your client foresee? He foresees zero loss for the bank because he thought he was going to make a profit himself. So that means the loss amount should be zero because that's what he anticipated? I think there's a difference between what he intended and what he could foresee. As the case is most insightful, the government made clear that when you fraudulently obtain a loan based on inflating your income or whatever, it's certainly foreseeable to you that you'll default on that loan and that the bank will lose some amount of money. It's foreseeable that the market could go down a little bit and the bank will lose more than you had anticipated or intended. Well, it's foreseeable that bubbles burst. I mean, the stock market has a major dislocation every 10 or 20 years. People don't think it's going to happen, but it does. With due respect, Your Honor, that is the issue, whether that was the extent of that was foreseeable. Well, what's foreseeable mean? Is it meaning within the realm of possibility or something that's likely to happen over a period of time or something that has a great likelihood of happening? Where do we draw the line? The line can be drawn anywhere within broad range, but certainly reasonably foreseeable. So how do you give meaning to that language? If something that happens every now and then, every 5 or 10 years, well, then certainly there is a case that this is reasonably foreseeable. How long was the loan term here? I'm not sure, Your Honor. I believe it was 20 years. In a 20-year time period, looking at real estate prices, looking at the stock market, is a major dislocation an unusual event over a time period as long as 20 years? I think the evidence was that this was essentially unprecedented. That is the extent of the crash here. This, the bank recovered less, just about 25% of the value. There's, you can certainly, in catastrophic times, foresee even, you know, given the normal cycles, property losing 50% of its value. But 75%? That, no one foresaw that. I think I can say that with pretty good confidence. That was, the extent of this was not foreseeable. Some of it was, but not to the extent that this was. And that's really the crux of the issue here. Someone had, the court had, it was incumbent upon the court to determine whether what happened was reasonably foreseeable. And we're talking now about the vast percentage, the vast, the loss amount drove his sentence. So that was the greatest component of the guideline sentence. If, and the court found that there was a loss of $1,033,000, if just $33,000 less of that was foreseeable or reasonably foreseeable. Is foreseeability really even an issue? Application note three seems to talk about calculating the loss, reducing the loss by the amount the victim has recovered at the time of sentencing, from the disposition of the collateral. It doesn't say anything about foreseeability. That's correct. But that, in looking at this from a, just a practical perspective, obviously the way you're going to calculate loss, you're going to use 3E. And you're going to take what, the total amount that the bank was, was, lent, loaned, loaned, lent, and subtract what they recovered. That's basic common sense. Then you determine whether that loss was reasonably foreseeable. Where does it say that? It says that at 3A.4, where it defines loss. Reasonably foreseeable pecuniary harm, harm that the defendant knew or under the circumstances reasonably should have known was a potential result of the offense. That makes perfect sense. We're going to assess culpability on the basis of what he was responsible for or reasonably foresaw, not necessarily intended. But what he foresaw. So it makes sense, and in terms of general sentencing principles, it makes sense that once you have that overall loss on it, that's also going to inform uniformity of sentences. Otherwise, people who do the exact same acts, though at different times or different market conditions, if he happens to do it at a time period that we have evidence of, that's going to be a problem. If he does it at a time period, if he has a historic and catastrophic crash in the housing market, he's going to be punished much more severely than someone who commits the exact same fraud where the market is more stable. I don't see where that's unfair. In the one case, he causes more damage. And generally saying when you cause more damage, you get punished more severely. This doesn't strike me as particularly unfair. Generally we punish people for the damage they cause as long as the damage they cause has some connection in terms of mental state to what they did. So that's where the foreseeability requirement comes in. As long as the damage he caused was reasonably foreseeable. And that's a really broad standard and can contain a whole bunch of damage. Then there's no unfairness at all in assessing all that to him. But to the extent that it wasn't, then that is unfair. And that is at odds with the sentencing guidelines and the way they use loss as a proxy for culpability. And then engraft a foreseeability requirement in the very definition of loss. You have about two and a half minutes. Are there any cases, do you know whether the reasonable expectation applies to collateral? In the case where there's collateral pledged, whether that's just actual loss or reasonably anticipated loss? Well, to be honest, most of the cases that have dealt with this issue from other circuits go the other way. And those are mostly cited in the governance brief. There's even one more since the briefing from the Tenth Circuit. But with due respect, that analysis reads the foreseeability requirement right out of the loss definition in the guidelines. They're using a credit against loss provision in a way that was never intended to. That's the first thing to determine what the loss is. Then you determine whether that loss, how much that loss is reasonably foreseeable. In almost every case, it will be the fact that all of it is reasonably foreseeable. It's just in this particular circumstance of this case where we have a historic, unprecedented, unanticipated housing crash. That causes this unfairness, and the guidelines aren't well-equipped to deal with it. But I think the Fourth, Sixth, and Second Circuit have rejected your argument. Yes, Your Honor. Maybe we're more enlightened. You have 42 minutes. Second. Good morning, Your Honor. It's Joseph Whitman on behalf of the United States. The defense's point about whether or not the market crash were foreseeable misconstrues the basic way the guidelines direct the market crash. The first step in a lawsuit is to go to the district courts to calculate actual loss. There's two steps. The first step, what should the defendant have known or reasonably should have known was the potential result of the offense. And the second step is minus the value of the collateral or what the victims, in this case the banks, were able to resell the collateral for. In every case like this, where you have a broad-based fraud scheme to defraud banks, the result of that first step is the unpaid loan principle. We would submit that in this case and the other cases that are cited in our brief and referenced during defense counsel's argument, the unpaid loan principle, it is reasonably foreseeable. If you defraud a bank and make them look like you're a much more qualified borrower, then you in fact are. In the manner certainly that this defendant did, it is reasonably foreseeable that a potential result is you're not going to pay back your loan. This defendant made one mortgage loan payment. And he also was a real estate agent. This was his business. The bank didn't suffer loss of the entire loan. Are you suggesting that the recovery via collateral, whatever you foreclosed, however they get the value realized, whatever they can from the collateral, should be disregarded? Or isn't it fair to say, well, they'll get something out of it, so what's reasonably foreseeable has to take into account what they can recover from the collateral they're given? That is the approach that was taken in the Parrish case, which is the main case. Which is basically they combine the two. So you consider the value of the collateral? The value of the collateral is only relevant to that second step. Again, I'm not clear on your position. Are you saying we should disregard the second step, or it should be considered as part of the calculation? Oh, it should be considered as part of the calculation. So the question of what's reasonably foreseeable also encompasses the question of what may be realized on the collateral? Your Honor, respectfully, no. Okay, so why not? If it's supposed to be part of the calculation, why do we disregard the second step? For two reasons. Number one, the plain meaning and the plain reading of the application notes make very clear what the sentencing guidelines intend. And number two, for sound policy reasons, which Your Honor referenced during defense counsel's argument. Well, I understand the policy reasons. I'm first trying to pin down your argument, and second, you're now saying something which I think may be a little extreme, which is that you disregard the enormous likelihood of recovering something on collateral. As I understand it, you're saying we should simply look at the amount of the loan, that's the potential loss to the financial institution. But if the financial institution got collateral, shouldn't that be considered in some fashion, that there is an overwhelming likelihood that at least something will be realized from the collateral by the bank, as it was here? Well, Your Honor, first of all, it's not the amount of the loan. It's the amount of unpaid principal, which in this case is almost exactly the same because the defendant made one payment. But at the time the loan was made, the banks exposed that much. And it will go down as payments are made, but at the beginning it's going to go down such an infinitesimal amount that we're basically talking about the amount of the principal is the same as the amount of the loan here. In this case, you're right, because of the defendant's fraud scheme, yes. The first step, as I said, I mean, the first step is the unpaid loan principal. And in a case like this where you're defrauding the banks, that is reasonably foreseeable. Is it reasonably foreseeable that a bank will realize zero on collateral? Whether it is or not. Whether it is or not as a factual matter, we would submit, is not relevant to that first, is not relevant to the second step. So I'm really going to go back to the same place. I do not understand why you say the second step shouldn't be considered if you acknowledge it's something that would be included within the loss calculation. Why should we disregard entirely the overwhelming likelihood of something being realized from the collateral? I don't understand. You're saying we disregard the second step? No, Your Honor. I'm not. Your Honor, no, I'm not. Respectfully judge my argument. That may be. I'm totally confused by what you're saying. If you have these figures, you get a loan of $2 million. He doesn't pay the loan. You have a house which may be worth $1.5 million. If you sell it for $1.5 million, you subtract that, don't you? Yes, you do. You do subtract it. You shouldn't disregard it. But there is no foreseeable, in terms of how much the collateral is going to be worth. Well, no, that's, I think we're getting all mixed up about foreseeability. You take a $2 million loan, and then they don't pay you.  Now, the guidelines say if you've sold it for $1.5 million, that's what you deduct. If you haven't sold it, you estimate the fair market value of it, and you deduct that. So I think that's what Judge Clifton was asking you about, was do you deduct anything for keeping the house and selling it? And I understood you to say no, and it seemed to me the answer was yes, that's the second step. The answer is yes. I apologize if I caused a misunderstanding about that. The answer is yes, you do deduct it. That's what the second step requires. But your view is that you don't determine how foreseeable it is, what that amount will be. Correct. The second step, the value of the collateral, there is no foreseeability. But I don't see how you can get away from foreseeability, because I thought the loss has to be foreseeable. And without making some sort of judgment as to what the collateral is worth, how do you determine the foreseeability of the loss? The way the guidelines are set out, the way that the other, including the Second Circuit, have interpreted this problem, is that the first step does not look at the value of the collateral, that the unpaid loan principle is, there is a foreseeability element to it, and in a fraud scheme like this, where you're making rampant misrepresentations to the banks, the unpaid loan principle is the foreseeable loss amount. Well, what if, contrary to all expectations, or maybe consistent with some expectations, the collateral goes up in value sharply, and it winds up wiping out the entire loss? They actually get more for their collateral than the loan is worth. Is there a loss there? If the bank is able to recover everything that they loaned. You still have a fraud, right? You certainly do. I guess in that situation, the analysis would be, what was the intended loss? And it would be a very different situation. I mean, that's the situation certainly the defendant would have liked to have found himself in. He was planning on making money off this fraud scheme. So there would be no actual loss if the banks were able to recover all their unpaid loan principle. It would still be a crime. Yes, sir. Yes, it would. Yes, Your Honor. It's still prosecutable. Yes, it certainly would be. So now we're at sentencing, and it's a happy circumstance where the rising tide lifts all boats, and when the dust clears, the bank is in the black. Black is, I mean, it's got more money than the loan. Where do we stand there in terms of punishment? I think you would have to look at the intended loss, and you'd have to try to figure out. Well, take the idea that I think Judge Kaczynski suggested. The intended loss, they didn't really intend any particular loss. They also hoped if they got that money that the market would go up and everybody would come out fine. So the intended loss wouldn't help you. It just, I guess, wouldn't have the guideline points you want. The guideline, I assume, doesn't tell you that if this scheme works, you're not sentenced to certain something, but you can't add points for loss. And, Your Honor, that sounds entirely plausible. That would be the alternate scenario. And that actually underscores the policy. You're actually saying something else than Judge Reinhart. You're saying you look at the intended loss. You actually can add something if they had an intended loss or foreseeable loss that was greater than it turned out to be. And I'm just wondering what the consistency is of saying when there is a loss, you just look at the raw numbers, and when there is no loss, you then go into something mental like the intent or the foreseeability. I think if it was an intended loss situation, it probably could be argued reasonably either way. Our position would be that if you are able to extract millions of dollars from banks based upon rank misrepresentations, that the intended loss probably is the amount that you got from the banks for your lives. And that, I think, is entirely consistent with what our position is here in this case. But the defendant, in a way, was fortunate that they were able to get something back off of these properties. I'm sorry. I think I heard you just say that if, in fact, there is no loss, then you go to intended loss, which winds up being the amount of the loan. So if you're lucky enough to have the collateral go up and there is no actual loss, you then charge an entire amount of the loan as intended loss. I think that would be a reasonable position. I do. Because... It's a little bizarre. It's unusual. I mean, I see what the court means, but nonetheless, there is, I mean, the money that he's getting from his lives is, you know, that's the intended loss. That's what he's trying, the money that he's trying to get as a result of the loss, as a result of his fraudulent scheme, this broad-based fraudulent scheme. But my colleagues have said, you know, he doesn't intend to lose anything. He doesn't intend anybody to lose anything. He intends everybody to make money. And I would like to make one other point, which is, as this Court knows, the advisory guidelines is basically just a starting point. And if there are inequities, the district court is permitted, of course, required to balance those out. You know, this is a starting point. It's not presumptively reasonable for the court to find the appropriate sentence under the 3553A factors. Thank you. You're out of time. Okay. Thank you, Your Honors. Mr. Tarrack, I'll give you a minute, if you wish to take it. Thank you. Case decided. You will stand submitted.
judges: Kozinski, Reinhardt, Clifton